UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

## CIVIL MINUTES - GENERAL

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**       **(IN CHAMBERS)**

**Defendant Investec Trust (Switzerland) S.A.'s Motion to Dismiss for Failure to Prosecute** (filed 2/19/2009)

**Defendant Investec Trust (Switzerland) S.A.'s Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment** (filed 2/19/2009)

## I.       INTRODUCTION AND BACKGROUND

Plaintiffs, Fidelity National Financial, Inc. and Fidelity Express Network, Inc. (collectively, "Fidelity"), are judgment creditors on a $13.5 million judgment awarded on to plaintiffs on June 18, 2002, against defendants Colin and Hedy Friedman ("the Friedmans") and Farid Meshkatai and Anita Kramer Meshkatai ("the Meshkatais") (collectively, "judgment debtors") in Fidelity Nat'l Fin., Inc. et al. v. Friedman, et al., Case No. CV 00-06902-GAF. Fidelity was able to collect only a nominal amount from the judgment debtors despite serving over ten levy and garnishment orders on judgment debtors' bank accounts and businesses.

On July 6, 2006, Fidelity filed a complaint in the present action, alleging violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"); fraudulent conveyance in violation of California Civil Code § 3439.04 (the California Uniform Fraudulent Transfer Act) ("CUFTA"); and conspiracy to defraud creditors against seven judgment debtor defendants and fifteen other persons and entities. Compl. ¶¶ 27-32. On January 9, 2007, plaintiffs filed a first amended complaint (FAC), adding a claim seeking

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

to set aside the spendthrift provisions in the defendant trusts, and adding a number of additional parties as defendants, including Investec Trust (Switzerland) S.A. ("ITSA"), as trustee for the Zodiac Trust.  On July 23, 2007, Fidelity filed a second amended complaint (SAC), adding Mehdi Ektafaie as a defendant to the third claim for relief for fraudulent conveyance in violation of the CUFTA, and terminating three unserved defendants.[1]

On January 11, 2007, the Court granted plaintiffs' motion for preliminary injunction freezing defendants' assets, thereby enjoining defendants from withdrawing, transferring, assigning, conveying, pledging, hypothecating, dissipating, mortgaging, or disposing of in any manner the funds in their possession and any funds, assets, realty or personalty, tangible or intangible, choses in action, or other property received, directly or indirectly, by defendants.  January 11, 2007 Order at 15-16.  On September 11, 2007, the Ninth Circuit Court of Appeals affirmed the Court's preliminary injunction order.

On May 31, 2007, the Court denied the Spector defendants' motion for summary judgment, with the exception that the Court granted summary judgment in favor of Medhi Ektefaie with respect to the RICO and conspiracy claims.[2]  However, on July 24, 2007, the Court granted Fidelity's motion for reconsideration of summary judgment as to

---

[1] The following are currently defendants in the instant action: Colin H. Friedman, individually and as trustee of the Friedman Family Trust UDT; Hedy Kramer Friedman, individually and as trustee of the Friedman Family Trust UDT; Farid Meshkatai; Anita Kramer Meshkatai, individually and as trustee of the Anita Kramer Living Trust; Steven Spector, as trustee of the Kramer Family Trust, the Friedman Insurance Trust, the Negev Trust, the Brendon Friedman Trust, the Jason Friedman Trust, and the Elan Yosef Meshkatai and Arianna Meshkatai Irrevocable Trust, and Aries Trust; Lorraine Ross, as trustee of the Friedman Insurance Trust; Space Planners LLC, d/b/a Closets by Design; Azura International LLC; Worldwide Network, Inc.; Executive-Worldwide Inc.; Executive Legal Network, Inc.; KZE Attorney Service, Inc.; Worldwide Reprographics, Inc. d/b/a Simplex Reprographics; Medhi Ektefaie; ITSA, as trustee for the Zodiac Trust; Kramer Foundation; and Necessary Holdings, Inc.

[2] The Spector Defendants are Steven Spector; Azura International LLC; Worldwide Network Inc.; KZE Attorney Service Inc.; Worldwide Reprographics; Executive-Worldwide Inc.; and Necessary Holdings, Inc.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

Ektefaie, and denied summary judgment as to Ektefaei.

On February 19, 2009, ITSA filed the instant motion to dismiss for failure to prosecute and the instant motion for summary judgment or, in the alternative, partial summary judgment. Fidelity filed oppositions thereto on March 2, 2009. Replies were filed on March 9, 2009. A hearing was held on March 16, 2009. After the hearing, Fidelity filed a supplemental brief on March 23, 2009. ITSA filed a response on March 27, 2009. After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

## II.    STATEMENT OF FACTS

Noach Kramer was the father of Hedy Friedman and Anita Meshkatai. Opp'n at 3; Mot. at 1. The Noach Kramer Foundation (the "Foundation") was established in April, 1972, and was funded by Noach Kramer's South African assets. Mot. at 1; Opp'n at 3. The Foundation was not a Trust and its assets could be reached by creditors. Pl's Separate Statement of Undisputed Facts ("SSUF") ¶ 11; Def's Response to Plaintiff's Separate Statement of Undisputed Facts ("RSSUF") ¶ 11.

According to ITSA, the Zodiac Trust ("Zodiac") was established in March 2000. Pl's SSUF ¶ 14; Def's RSSUF ¶ 14. By Zodiac's terms, Zalman Kremerman, a relative of the judgment debtors, is Zodiac's "protector" and can appoint and remove trustees and apply or appoint any amount of the income or principal of the Zodiac Trust. Pl's SSUF ¶ 16; Def's RSSUF ¶ 16. By Zodiac's terms, ITSA is Zodiac's trustee and, subject to Kremerman's approval, can create subtrusts and apply or appoint any amount of Zodiac's income or principal. Pl's SSUF ¶ 17; Def's SSUF ¶ 17. Zodiac contains a "Protective Provision" which restrains alienation of Zodiac assets such that no asset is "liable to any levy, attachment, execution or sequestration while in the possession of the Trustee." Pl's SSUF ¶ 15; Def's RSSUF ¶ 15. Zodiac's beneficiaries are the lawful descendants of Noach Kramer, their spouses, and six other people. Pl's SSUF ¶ 18; Def's SSUF ¶ 18.

After Fidelity filed its original lawsuit, Zodiac received $442,145.89 from the Meshkatais. Pl's SSUF ¶ 24; Def's RSSUF ¶ 24. Before Fidelity's judgment, Zodiac distributed assets directly to the Friedmans and the Meshkatais, but after Fidelity's judgment, Zodiac did not distribute any assets directly to the judgment debtors but did distribute assets to Anna Kramer (Kramer Family Trust), Jason Friedman Trust, Brandon

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

## CIVIL MINUTES - GENERAL

| Case No. | CV 06-4271 CAS (JWJx) | | Date | April 27, 2009 |
|----------|------------------------|--|------|----------------|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | | |

Friedman Trust, Arianna Meshkatai Trust, Elan Meshkatai Trust, Arianna Meshkatai, Elan Meshkatai, Negev Trust, Arianna Meshkatai, Elan Meshkatai, and Aries Trust. Pl's SSUF ¶ 35; Def's RSSUF ¶ 35.

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990). See also Celotex Corp., 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. See also Abromson v. American Pacific Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

## IV.  DISCUSSION

### A.  Dismissal for Failure to Prosecute

Federal Rule of Civil Procedure 41(b) provides that a defendant may move to dismiss an action or any claim against it if the plaintiff fails to prosecute the action. ITSA seeks an order dismissing the instant action with prejudice as a result of Fidelity's alleged failure to prosecute, arguing that Fidelity failed to pursue its claims against ITSA  for 21 months while simultaneously actively litigating the matter against other defendants.

ITSA argues that despite the fact that ITSA was added as a party in January 2007, Fidelity's first attempt to serve ITSA did not occur until May 2008, when Fidelity unsuccessfully attempted to serve ITSA at the New York offices of Investec USA and Investec Securities U.S., which are separate entities and did not accept service from ITSA.  ITSA argues that it was not until September 22, 2008 that it was successfully served with Fidelity's SAC.  Mot. at 4.

ITSA analogizes the 21-month delay in service in the instant action to that in Anderson v. Air West, Inc., 542 F.2d 522, 524 (9th Cir. 1976), where the Ninth Circuit upheld the district court's dismissal of plaintiff's complaint against various defendants for failure to prosecute.  In Anderson, plaintiff did not serve defendants until over one year after the filing of the complaint; in dismissing the action against those defendants, the district court found that plaintiff had failed to offer a reasonable explanation for the delay in service, and that plaintiff had failed to rebut the presumption of resulting prejudice arising from the failure to prosecute.  Id. at 525.  In so doing, the court noted that "delay in serving a complaint is a particularly serious failure to prosecute because it affects all the defendant's preparations."  Anderson, 542 F.2d at 525.

ITSA further argues that dismissal is appropriate because ITSA was prejudiced by Fidelity's delay.  Mot. at 6, citing Nealey v. Transportation Maritima Mexicana, S.A., 662 F.2d 1275, 1281 (9th Cir. 1980) (whether "actual prejudice exists may be an important factor in deciding whether a given delay is unreasonable").  First, ITSA argues that because service was not timely effected, ITSA was not able to participate in the first 21 months of defense planning and early discovery proceedings, and that, as a result, ITSA is 21 months behind the other parties in its preparation for the case.  Mot. at 6-7.  Furthermore, ITSA notes that Richard Crook ("Crook"), a client manager for the Zodiac

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

Trust between July 2000 and March 2004, was killed in a car accident on August 2, 2007. Mot. at 7; Lofts Decl. ¶ 5.  ITSA argues that, if it had been promptly served by Fidelity, Crook would have been able to participate in the first seven months of ITSA's defense, and could have imparted knowledge regarding the formation of the Zodiac Trust and the loans it made to the Meshkatais.  Mot. at 7; See Anderson, 542 F.2d at 525 (finding prejudice where death of two witnesses six months after service prevented them from contributing significantly to the defense).

ITSA argues that, because it suffered prejudice, no lesser remedy than dismissal is appropriate, because, as in Anderson, "neither the payment of extra defense costs nor change in counsel would remedy all the prejudice suffered by the defendants.  Even though dismissal is a harsh remedy, it is clearly appropriate in the circumstances of this case."  Anderson, 542 F.2d at 526.

Fidelity, however, counters that the delay in service of process was justified. Fidelity argues that it began the process of attempting to serve ITSA on January 9, 2007, but that in order to do so, it had to determine the proper method of service under the Hague Convention and Swiss law, determine ITSA's address in Switzerland, and translate the FAC, and, later, the SAC, into French.  Mot. at 1.  Fidelity argues that, after this was accomplished, Fidelity forwarded the FAC on May 14, 2007 to the Central Authority designated by the Swiss government to serve such documents.  Mot. at 4. Fidelity argues that, on July 5, 2007, however, Swiss authorities informed Fidelity that it had determined that the ITSA employee that Fidelity had identified to accept service, Zelman Kremmerman, was no longer at the address where the Swiss authorities had attempted to serve process.  Mot. at 5.  Fidelity argues that its subsequent plans to reattempt service were halted when stays in the instant action between July 23, 2007 and April 4, 2008 prevented Fidelity from serving ITSA .  Mot. at 5-6.  After the stays were lifted, Fidelity argues, it continued to work toward serving ITSA, although it was again delayed because it had to translate the SAC into French.  Mot. at 6.  Fidelity states that it sent the SAC to the Swiss authorities on August 14, 2008, who subsequently successfully served ITSA on September 22, 2008.  Mot. at 7.

ITSA, however, counters that the above facts do not demonstrate that Fidelity exercised proper diligence.  ITSA notes that Fidelity admits that the translation of the FAC only took 10 days, and argues that identifying ITSA's address and proper Swiss procedure for effecting service could have been accomplished through cursory searches

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|----------|------------------------|------|----------------|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

on the Internet.  Reply at 3.  Furthermore, ITSA disputes Fidelity's claim that it attempted to serve ITSA in May 2007, arguing that, in fact, the service documents indicate that plaintiff was attempting to serve Zelman Kremmerman, then a defendant and an employee of ITSA, in his capacity as a defendant.[3]  Reply at 5.  In addition, ITSA argues that Fidelity has failed to explain why it did not seek leave of Court to serve ITSA during the stay.  Reply at 5.

The Court finds that, despite ITSA's arguments, dismissal of the instant action for failure to prosecute is inappropriate.  Dismissal for failure to prosecute is a "harsh penalty" and "should be imposed only in extreme circumstances. <u>Johnson v. United States Dep't of Treasury</u>, 939 F.2d 820 (9th Cir. 1991).  The Ninth Circuit has held that although "the factors of delay and prejudice" may weigh in favor of dismissal for failure to prosecute, there is also "a competing concern at stake – specifically, the interest in disposing of cases on their merits. The pertinent question for the district court, then, is not simply whether there has been any, but rather whether there has been sufficient delay or prejudice to justify a dismissal of the plaintiff's case."  <u>Nealey</u>, 662 F.2d at 1280.  Therefore,

> where a plaintiff has come forth with an excuse for his delay that is anything but frivolous, the burden of production shifts to the defendant to show at least some actual prejudice. If he does so, the plaintiff must then persuade the court that such claims of prejudice are either illusory or relatively insignificant when compared to the force of his excuse. At that point, the court must exercise its discretion by weighing the relevant factors-time, excuse, and prejudice."

<u>Nealey</u>, 662 F.2d at 1281.

In this case, Fidelity has come forth with non-frivolous excuses for its delay in serving ITSA: complexities of effecting service in Switzerland and the stays in the instant action.  Furthermore, while ITSA has argued that it has been prejudiced due to the delay, the Court finds that ITSA's arguments of prejudice are not sufficient to warrant the "harsh

---

[3] Fidelity, however, appears to argue that it was in fact attempting to serve ITSA, and that Zelman Kremmerman was the person Fidelity had identified to accept service of process.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

penalty" of dismissal in the instant action. See Johnson, 939 F.2d 820 (9th Cir. 1991). First, as Fidelity notes in its opposition, ITSA has not presented sufficient evidence detailing how Crook, the ITSA employee who died in a car accident, would have had specific relevant information to the instant action, and therefore, ITSA's argument of prejudice due to delay is speculative. See Opp'n at 2-3. Furthermore, it appears that ITSA was put on notice of the suit at least as early as May 2008 when Fidelity attempted to serve ITSA by delivering the papers to Investec USA and Investec Securities U.S. See Lofts Decl ¶ 3 (acknowledging that Investec USA's general counsel informed ITSA that Fidelity was attempting to serve ITSA with a complaint).

Furthermore, this case is distinguishable from Anderson, 542 U.S. at 525, in which the court found that plaintiff had "offered no reasonable explanation for the one-year delay in service of process" and further found that "plaintiff's counsel deliberately delayed, trying to decide whether he really wanted to serve" the defendants. Id. at 525. In this case, by contrast, there is no indication of any deliberate delay on Fidelity's part. Therefore, the Court declines to dismiss this action for failure to prosecute.

**B.     Summary Judgment**

**1.     Fidelity's Claim for Fraudulent Transfer**

The CUFTA provides:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor.

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:

(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

(B) Intended to incur, or believed or reasonably should have believed that he or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

she would incur, debts beyond his or her ability to pay as they became due.

California Civil Code § 3439.04 (a)

Additionally, the CUFTA provides that in determining actual intent under Section 3439.04(a)(1), the court may consider any or all of the following factors:

(1) Whether the transfer or obligation was to an insider.
(2) Whether the debtor retained possession or control of the property transferred after the transfer.
(3) Whether the transfer or obligation was disclosed or concealed.
(4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
(5) Whether the transfer was of substantially all the debtor's assets.
(6) Whether the debtor absconded.
(7) Whether the debtor removed or concealed assets.
(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.
(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

Cal. Civ. Code § 3439.04(b).

A transferee may be held liable under the CUFTA's broad remedial provision, which permits the creditor to seek an avoidance of the transfer or obligation, an attachment or provisional remedy against the asset transferred or its proceeds, injunctive relief, appointment of a receiver, and "[a]ny other relief the circumstances may require." Cal. Civ. Code § 3439.07; see also Cal. Civil Code § 3439.08(b)(1) (providing that judgment may be entered against "[t]he first transferee of the asset or the person for whose benefit the transfer was made").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

### a.   Evidence of Fraudulent Transfers and Obligations

ITSA argues that when the Zodiac Trust was formed, it was funded with "all right, title and interest in and to any and all distributions from the Noach Kramer Foundation." Mot. at 4; Lofts Decl. ¶ 6.  When Kramer died, his remaining assets were transferred to the Zodiac Trust.  Lofts Decl. ¶ 16.  ITSA argues that, therefore, the only assets in the Zodiac Trust at its inception came from the Noach Kramer Foundation, and none came from the Friedmans and the Meshkatais.[4]  Mot. at 4; Lofts Decl. ¶ 7, 24-25.

---

[4] As a preliminary matter, the Court notes that both parties object to the admissibility of the other parties' evidence.  Fidelity argues that ITSA has not met its burden in moving for summary judgment, because the evidence submitted by ITSA to support its argument of no fraudulent transfers is the declaration of Jason Lofts, an executive director of ITSA who did not become involved with Zodiac until 2004; Fidelity argues that, because Lofts involved with Zodiac at the time the alleged transfers took place, his assertions are not based on personal knowledge and therefore are inadmissable hearsay. Opp'n at 10. However, even if ITSA is correct that Lofts declaration is inadmissable, the Court finds that ITSA may nevertheless satisfy its initial burden on summary judgment by demonstrating that Fidelity lacks evidence of any fraudulent transfers committed by ITSA.

ITSA argues that much of the evidence submitted by Fidelity is inadmissible, because the exhibits relied on by Fidelity are attached to the declarations of its two lawyers, "but these lawyers have no personal knowledge of the documents attached to their declarations.  As such, the facts supported by the declarations and the attached exhibits are afforded no weight"  Reply at 14, citing <u>Bank Melli Iran v. Pahlavi</u>, 58 F.3d 1406, 1412 (9th Cir. 1995) (declarations of counsel disregarded because they are not based on personal knowledge); <u>Orr v. Bank of America</u>, 285 F.3d 764, 773-74 (Ninth Cir. 2002) ("in a summary judgment motion, documents authenticated through personal knowledge must be attached to an affidavit that meets the requirements of [Fed. R. Civ. P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence").  ITSA argues that "[e]xamples of the inadequacy of the evidence offered by Fidelity include: emails submitted by its counsel which they neither authored nor received . . . , letters they neither authored nor received . . . , and documents which they did not subscribe."  However, many of the documents appear to be self-authenticating under Fed. R. of Evid. 902, and ITSA provides no specific challenge to the authenticity

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

ITSA further argues that the only money the Zodiac Trust ever received from the judgment debtors were principal and interest payments made to it by Farid and Anita Meshkatai pursuant to two loans. Mot. at 4; Lofts Decl. ¶ 8, 18-23, 25. Specifically, ITSA states that Newton Financial Services, Inc. ("Newton Financial"), a wholly owned subsidiary of the Zodiac Trust, made an interest-only loan to the Meshkatais in the sum of $350,000 on October 1, 2000, and that between October 2000 and May 2002, the Meshkatais made 17 interest payments to Zodiac of $2,479.17 each, for a total of $42,145.89. Mot. at 4; Lofts Decl. ¶ 18-19, 21. ITSA argues that the Meshkatais never made another payment, and the principal sum was recorded on the Zodiac Trust books as a partial revocation of capital. Mot. at 5; Lofts Decl. ¶ 22. ITSA also states that on November 22, 2000, Newton Financial made a second interest-only loan to the Meshkatais in the sum of $400,000, but that the Meshkatais never made an interest payment on the note. Mot. at 5; Lofts Decl. ¶ 23. However, the Meshkatais repaid the principal amount on June 20, 2002. Mot. at 5; Lofts Decl. ¶ 23. ITSA argues that aside from these loan payments, totaling $442,145.89, no defendant ever transferred money or assets to the Zodiac Trust. Mot. at 5; Lofts Decl. ¶ 25. Furthermore, ITSA argues that it was not involved in any financial transaction with defendants where it knew or had reason to suspect that the proceeds of the transaction were obtained by an unlawful manner. Mot. at 5; Lofts Decl. ¶ 25. Therefore, ITSA argues, the evidence establishes that it did not participate in any asset protection scheme involving defendants. Mot. at 7.

Fidelity, however, argues that there is sufficient evidence of fraudulent transfers involving the Zodiac Trust so as to raise a genuine issue of material fact. Fidelity's arguments of fraudulent transfers fall into the three general categories: (1) transfers that occurred prior to the Zodiac Trust's inception, (2) transfers from the Zodiac Trust to other entities, and (3) transfers to the Trust by the judgment debtors.

---

of any of the document submitted. See <u>Orr</u> at 774 ("a proper foundation need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902. See Fed. R. Evid. 901(b) (providing ten approaches to authentication); Fed. R. Evid. 902 (self-authenticating documents need no extrinsic foundation)"). Therefore, the Court considers the documentary evidence submitted by Fidelity.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

## CIVIL MINUTES - GENERAL

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|----------|------------------------|------|----------------|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

### i.    Transfers Prior to the Zodiac Trust's Inception

First, Fidelity disputes ITSA's argument that the Zodiac Trust did not contain the judgment debtors' assets at the inception of the Trust in 2000.  Specifically,  Fidelity presents evidence indicating that when Fidelity purchased Express Network and Credit Reports from the judgment debtors on October 23, 1997, the judgment debtors directed Fidelity to pay $415,000 to Noach Kramer, $500,000 to the Noach Kramer Foundation, and $500,000 to FKN Organization Ltd (the "pre-Zodiac entities"). [5] [6]  Opp'n at 3; Cabanday Decl. ¶ 4.  Fidelity argues that, subsequently, just before Fidelity filed its fraud lawsuit, the Kramers and the judgment debtors agreed that the Foundation would assign all its assets to the Zodiac Trust, and, as a result, on March 23, 2000, over $1 million in the judgment debtors' assets (i.e. those assets that the judgment debtors had directed Fidelity to pay to the pre-Zodiac entities) were transferred to Zodiac.  Mot. at 4; Kroll Decl. Ex. 5 (Zodiac Trust, Trustee's Report); Kroll Decl. Ex. 7 (Declaration Concerning Noach Kramer Foundation, Vaduz" signed by Noach Kramer, Anna Kramer, Farid Meshkatai, Anita Meshkatai, Colin Friedman, and Hedy Friedman"); Cabanday Decl. Ex. 1, 2.  Therefore, Fidelity argues that, contrary to ITSA's assertion, the Zodiac Trust did in fact hold the judgment debtors' assets at the inception of the Trust.

Similarly, Fidelity argues that the Zodiac Trust also received at its inception a $900,000 unsecured note on a 1997 loan from the Foundation to Friedman.  Mot. at 4; Kroll Decl. Ex. 7; Kroll Decl. Ex. 8 (Deed of Donation); Kroll Decl. Ex. 30 (Loan Agreement between Colin Friedman and Noach Kramer Foundation, dated October 27, 1997, for $900,000).  Fidelity argues that the circumstances surrounding this loan are suspect.  First, Fidelity argues that there are two different versions of the loan note, both of which are made payable on demand, signed, not witnessed, and not notarized, but which carry different notations regarding the interest rate.  Opp'n at 6; Kroll Decl. Ex 30, 31 (Loan Agreements).

---

[5] FKN Organization Ltd. is an entity which later became wholly owned by the Zodiac Trust.  Kroll Decl. Ex. 10 (The Zodiac Trust, Trustees' Report) ("The trust is the sole shareholder of a BVI company named FKN Organization Ltd.")

[6] Fidelity argues that the judgment debtors admit that these transfers occurred, and that, although the judgment debtors claim that they directed this money to be paid as repayments for outstanding loans, although, Fidelity argues, there is no documentation for those loans.  Opp'n at 3; Pl's Cabanday Decl. Ex. 3 (Meshkatai Decl at ¶ 23-25).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

Fidelity further notes that Friedman allegedly entered into the loan on October 27, 1997, just four days after he and the other judgment debtors received over $8 million from Fidelity. Opp'n at 5.  Fidelity further argues that it is undisputed that Friedman never paid the Foundation anything on the note and that the Foundation never attempted to enforce it. Kroll Decl. Ex. 28 (November 2, 2006 Friedman Decl.) ¶ 11 ("As of 2002, Hedy Kramer Friedman, and myself had not made any principal payments on the October 27, 2007 loan").

ITSA, however, argues that the fact that the judgment debtors instructed Fidelity to transfer funds for the purchase of Express Network and Credit Reports to the pre-Zodiac entities is irrelevant to the instant motion, because this transfer occurred before the Zodiac Trust was even in existence.  Reply at 4.  Similarly, ITSA argues, the $900,000 loan between Friedman and the Noach Kramer Foundation occurred before the Zodiac Trust was in existence.  Reply at 4.  Therefore, ITSA argues, even if these transfers were in some way fraudulent, it cannot be held liable for them as Zodiac's trustee.  ITSA also argues that "[t]o reach Fidelity's conclusion that 'assets from the judgment debtors . . . were transferred to Zodiac' requires a leap in time and logic that is simply not supported by the evidence." Reply at 4.

### ii.    Transfers from the Zodiac Trust

Fidelity also argues that, after Zodiac was created, it engaged in fraudulent transfers of money to other trusts.  First, Fidelity argues that in December 2001, Zodiac created a subtrust, the Negev Trust, while in August 2004, it created a second subtrust, the Aries Trust.  Mot. at 4, citing Spector Decl ¶ 15 ("the Negev Trust was established by the Kramers in 2000 . . . since then it has received some modest distributions from the Zodiac Trust"); Spector Decl. ¶ 14 ("The Aries Trust was established in 2004 with a $300,000 transfer from the Zodiac Trust").  Fidelity next argues that a few days before entry of Fidelity's judgment in 2002, Zodiac transferred the $900,000 Friedman loan note to the Negev Trust and instructed Capital Title Agency to record a lien on Friedman's house in favor of the Negev Trust, so as to allow the Friedmans to transfer $900,000 to the Negev Trust.  Opp'n at 5; Kroll Decl. Ex 34 (June 10, 2002 Deed of Trust naming Capital Title Agency as Trustee, Trustee of the Negev Trust as Beneficiary, and the Friedmans as Trustor); Kroll Decl. Ex. 33 (Letter from Peter Rosenberg of Law Offices of Cozen O'Connor, attorney for Zodiac, to Capital Title Agency, regarding preparation of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

Friedmans Deed of Trust).[7]  Fidelity argues that although the Negev Trust on June 23, 2002, executed a release and reconveyance of the $900,000 lien (a copy of which was sent to Zodiac), the release and reconveyance was never recorded and the Friedmans transferred $877,034.61 to Negev in 2003; Negev then executed a second release and reconveyance. Opp'n at 6-7; Kroll Decl. Ex. 35 (Deed of Release and Reconveyance, copied to Law Offices of Cozen O'Connor); Ex. 37 (North American Title Company, Pre Audit, April 23, 2003, showing a $877,034.61 payoff to the Negev Trust).

Furthermore, Fidelity argues that in October 2004, after the entry of judgment in favor of Fidelity, Zodiac transferred $300,000 to the Negev Trust as a "sham loan", whose interest and principal were due on October 22, 2014, and the terms of which were dictated by Friedman.  Kroll Decl. Ex. 60 (Unsecured Promissory Note, listing Newton Financial Services, Inc. as Lender and Steve Spector, Trustee of the Negev Trust, as Borrower); Ex. 57 (wire transfer); Ex. 59 (email between Peter Rosenberg and Colin Friedman regarding draft portfolio interest note, in which Friedman states "[p]lease have the interest due and payable with the principal, not monthly").  Fidelity argues that in January 2007, Zodiac wrote off the loan as worthless despite the fact that the Negev trust had substantial assets, including a $500,000 lien on the Meshkatai's house, which, Fidelity argues, was worth over $2 million.  Opp'n at 8; Lofts Decl. ¶ 9 ("As of the date of this declaration, the Zodiac Trust has no assets.  The Zodiac Trust has no cash or securities, all outstanding loans have been written off as worthless"); Ex. 55 (Schedule D, Creditors Holding Secured Claims, filed by Anita Meshkatai, listing $500,000 deed of trust in favor of Negev against property valued at $2,234,201).

Finally, Fidelity argues that Zodiac transferred $350,000 to Anna Kramer and $450,000 to WWAS Holding Ltd, in order purchase Worldwide Network for Farid Meshkatai, in order to avoid levy by Fidelity.  Kroll Decl. Ex. 25 (document entitled "Foundation: Zodiac Trust," which lists "Wire Transfer into Anna Kramer's Acct out of Foundation for Investment to WW"); Kroll Decl. Ex. 26 (email exchange from Sanford Miller, judgment debtors' attorney, discussing transfer of $450,000 from Zodiac to WWAS Holding Ltd).  ITSA disputes that the Trust ever made such transfers.  Lofts Reply Decl. ¶ 10, 11.

---

[7] This letter is dated October 24, 2006, which Fidelity states is apparently an error. Kroll Decl. ¶ 18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

### CIVIL MINUTES - GENERAL

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

ITSA, however, argues that all of Fidelity's evidence is irrelevant.  Specifically, ITSA argues that "[b]ecause the Zodiac Trust does not contain the judgment debtors' assets, any transfer from the Zodiac Trust to any other entity cannot be considered a fraudulent transfer – by definition, a fraudulent transfer involves *the debtor* disposing of or parting with an asset.  Reply at 4.  Furthermore, ITSA argues, "because the Zodiac Trust was not created with the judgment debtors' assets, Fidelity was never in a position to collect upon the assets in the Zodiac Trust."  Reply at 4.

### iii.    Transfers to the Trust by the Judgment Debtors

Fidelity additionally argues that the  $350,000 and $400,000 loans that the Zodiac Trust made to the Meshkatais acknowledged by ITSA were in fact "sham loans," and that the subsequent repayment of these "loans" by the Meshkatais to Zodiac were in fact fraudulent transfers.  First, Fidelity argues that the circumstances of these loans are suspect. With regard to the $350,000 loan made in October 2000, Fidelity argues that Meshkatai relatives witnessed the note, and that Zodiac never required the Meshkatais to repay the principal when it became due one year later.  Opp'n at 7; Kroll Decl. Ex. 39 (unsecured promissory note). With regard to the $400,000 loan made on November 22, 2000, Fidelity argues that the Friedmans witnessed the note, and that Zodiac never required the Meshkatais to make any interest payment due on the note, despite the fact that the note bore interest at the rate of 8.5 percent.  Opp'n at 7; Lofts Decl. ¶ 22, 23; Kroll Decl. Ex. 40 (unsecured promissory note).

Furthermore, Fidelity argues that the actions of Zodiac subsequent to the granting of the loans were suspicious.  Specifically, Fidelity argues that, pursuant to both loans, the Meshkatais granted "friendly liens" on their houses to Zodiac, which liens were not subject to foreclosure.  Opp'n at 8; Pl's Kroll Decl. Exs. 43 and 44 (Deeds of Trust and Assignment of Rent, listing Newton Financial Services as beneficiary); Kroll Decl. Ex. 56.  The day after the jury's verdict against the judgment debtors, on June 20, 2002, the Meshkatais transferred $400,000 to Zodiac, but, Fidelity argues, Zodiac did not release the lien until September 2004, when, as part of the Meshkatais' credit application to Wells Fargo, Zodiac reconveyed, without recording, the lien.  Lofts Decl. ¶ 23; Kroll Decl. Ex. 49 (August 29, 2005 Joint Escrow Instructions); Kroll Decl. Ex. 45.  With regard to the $350,000 loan, Fidelity argues that on October 11, 2004, Zodiac transferred the $350,000 unsecured note to the Aries Trust.  Opp'n at 8; Lofts Decl. Ex. 20.  In 2005, Zodiac transferred its lien to the Aries Trust.  Opp'n at 8; Pl's Kroll Decl. Ex. 52 (Deed of Trust).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

ITSA, however, disputes Fidelity's argument that these two loans to the Meshkatais were sham transactions. In particular, ITSA notes that Fidelity's argument that these loans were not valid loans made in exchange for reasonably equivalent fair value is contradicted by Fidelity's own statements that the Meshkatais actually received the $350,000 and $400,000. Reply at 8; See Pl's SSUF ¶ 56 ("In October, 2000, four months after Fidelity filed its lawsuit, Zodiac transferred $350,000 to the Meshkatais"), 61 ("On November 22, 2000, Zodiac transferred $400,000 to the Meshkatais"). ITSA also notes that the loans were granted before the judgment in favor of Fidelity in the underlying action was issued, and that, regardless, the judgment debtors were entitled to pay back the loans from Zodiac in preference over paying Fidelity's judgment. Mot. at 8-9, citing Cal. Civ. Code. § 3432 ("A debtor may pay one creditor in preference to another"); Lyons v. Security Pacific Nat. Bank, 40 Cal. App. 4th 1001, 1019 (1995) ("it is difficult to perceive how the payment of a debt which [is] justly owed, and which was past due, can be tortured into an act to hinder, delay, and defraud creditors"). ITSA argues that "the Meshkatais' preference for the Zodiac Trust loan rather than the Fidelity judgment, though frustrating for Fidelity, was not fraudulent as a matter of law." Reply at 9. ITSA also argues that Fidelity's arguments of fraud are contradicted by the fact that the Meshkatais were in a better position to pay the judgment as a result of the two loans, because the Meshkatais did not pay interest on the $400,000 loan and did not repay the $350,000 loan, and therefore conserved their assets. Mot. at 9.

In addition to the repayments of the alleged Meshkatai loans that the Zodiac Trust received, Fidelity asserts that the Friedmans made monthly payments of $5,265 to FKN Organization, which, after Zodiac's inception, was wholly owned by Zodiac. Opp'n at 11, citing Kroll Decl. Ex. 12 (May 4, 1999 Letter from Hedy Friedman directing Morgan Stanley to transfer $5,265 each month to FKN Organization from Friedman's account). ITSA, however, disputes this, arguing that the document only shows that plans were made to transfer, but in fact the transfer never happened. Lofts Reply Decl. ¶ 9.

### b.    Fraudulent Intent

With regard to fraudulent intent, Fidelity argues that the evidence demonstrates multiple "badges of fraud" of the kind codified in Cal. Civ. Code § 3439.04(b). First, Fidelity argues that "it is undisputed that all the transfers at issue were to insiders and that judgment debtors retained control over the assets. The Kramers, Friedmans. Meshkatais

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

and Zodiac's protector Zalman Kremerman are all related. The judgment debtors participated in the transfers of assets from the Foundation to Zodiac and from Zodiac to Negev and Aries." Opp'n at 12.

Furthermore, Fidelity argues, the circumstances of the transfers indicate that they were made in anticipation of litigation. Opp'n at 12. For example, Fidelity notes the Zodiac was created after Fidelity was sued, and that a few days before entry of Fidelity's judgment in 2002, Zodiac transferred the $900,000 Friedman loan note to the Negev Trust and instructed Capital Title Agency to record a lien on Friedman's house in favor of the Negev Trust, so as to allow the Friedmans to transfer $900,000 to the Negev Trust. Opp'n at 5. Furthermore, Fidelity notes, the loans from Zodiac both to the Meshkatais and to the Negev Trust occurred after the judgment debtors were sued by Fidelity. Reply at 13.

Furthermore, Fidelity again argues that there are significant questions as to whether the alleged loans to Friedman, the Meshkatais, and Negev were for equivalent value. Reply at 13. Fidelity notes that all three loans were unsecured and unenforced. Pl's SSUF ¶ 44, 57, 79. With regard to the Friedman loan, Fidelity argues, the fact that there were two different notes which purport to evidence the loan, and that neither Zodiac nor Negev ever enforced the loan, indicates that the transfers were fraudulent. Opp'n at 14. With regard to the Meshkatai loans, Fidelity argues that fraudulent intent is demonstrated because Zodiac did not release its $400,000 lien on the Meshkatais' house until years after the loan was supposedly repaid. Fidelity argues that the circumstances of the loan to Negev are similarly suspect, given that ITSA does not explain why it wrote off the loan to Negev as worthless despite the fact that Negev held a $500,000 lien on the Meshkatais' $2 million dollar property.

The Court finds that Fidelity has raised genuine issues of material fact as to whether ITSA, acting as trustee of the Zodiac Trust, participated in fraudulent transfers. For example, the Court finds that Fidelity has raised a genuine issue of material fact as to whether the two loans to the Meshkatais were fraudulent, given that ITSA did not require the Meshkatais to repay the principal on the $350,000 loan and did not require the Meshkatais to repay the interest on the $400,000 loan. Furthermore, Fidelity has produced evidence raising a question as to whether the Friedmans ever made monthly payments to the Trust. In addition, because Fidelity has raised a question of fact as to whether the Zodiac Trust contained the judgment debtors' assets, Fidelity's evidence regarding transfers to other defendant trusts, including the $300,000 loan to the Negev Trust which ITSA later

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

wrote off as worthless, could be material as well. Furthermore, the circumstances surrounding these transfers give rise to a question of fact as to whether ITSA acted with the relevant fraudulent intent.

### c.     Time Bar on Plaintiff's Claims

In its reply, ITSA argues that many of the transfers claimed by Fidelity are time-barred under the CUFTA. Reply at 5.

Cal. Civ. Code § 3439.09(a) states that an action under the CUFTA must be brought "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." Cal. Civ. Code § 3439.09(c) further provides that "[n]otwithstanding any other provision of law, a cause of action with respect to a fraudulent transfer or obligation is extinguished if no action is brought or levy made within seven years after the transfer was made or the obligation was incurred."

ITSA argues that, applying the four year statute of limitations, an actionable fraudulent transaction would have to have occurred on or after July 6, 2002 (i.e. four years prior to July 6, 2006, the date of the filing of this action). Reply at 6. ITSA argues that because the transactions complained of by Fidelity regarding the Zodiac Trust – including the alleged transfers that occurred before the inception of the Zodiac Trust and the alleged loans to the Meshkatais and their repayment – occurred before that date, they are all time-barred under the statute.[8] Reply at 5.

Fidelity responds first that it did not discover the fraudulent transfers before July 2005, and that, therefore, under the delayed discovery rule, its CUFTA claim was timely because it was filed within one year of discovery, on July 6, 2006. Sup. Br. at 4. Therefore, Fidelity argues that, at a minimum, those transactions which occurred within the seven-year limitations period set forth in § 3439.09(c) – i.e. those transactions that occurred in July

---

[8] ITSA argues also that the claims regarding the transactions arising from the sale of Express Network Inc. are barred by the doctrine of res judicata, because they should have been raised in the underlying lawsuit. Reply at 7. However, it is not clear to the Court that the alleged fraudulent nature would have been discoverable by Fidelity at the time of the underlying action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

## CIVIL MINUTES - GENERAL

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

1999 or later – are timely.

ITSA, however, counters that Fidelity's claim that it did not discover the fraudulent transfers until July 2005 is not alleged in the SAC, and that none of the evidence shows when Fidelity discovered the alleged involvement of ITSA, and that, therefore, Fidelity is not entitled to invoke the delayed discovery rule. Sup. Reply at 5; Wasco Products, Inc. v. Southwall Technologies, Inc., 435 F.3d 989, 991 (9th Cir. 2006) ("[F]ederal courts have repeatedly held that plaintiffs seeking to toll the statute of limitations on various grounds must have included the allegations in their pleadings").

Fidelity counters that it did in fact plead a basis for its delay in discovering the fraud, because the SAC alleged fraudulent concealment. Sup. Br. at 1, n.1. In California, "[i]n order to establish fraudulent concealment, the complaint must show: (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of fact sufficient to put him on inquiry. . . . " Conerly v. Westinghouse Electric Corp., 623 F.2d 117, 120 (9th Cir. 1980). Fidelity notes that its SAC alleged that defendants participated in "the Asset Protection Scheme to conceal and fraudulently transfer their assets and to avoid plaintiff's judgment" and stated that "[t]hrough years of party and third-party discovery, conducted after the entry of the Judgment, the review of thousands of pages of financial records, and the completion of a tracing and forensic analysis, plaintiffs [uncovered the elements of] the Friedmans' and Meshkatais' Asset Protection Scheme . . . " SAC ¶ 30; 49.

The Court finds that Fidelity has adequately set forth a basis for its delay in discovering the alleged fraudulent transfers: namely, fraudulent concealment on the part of defendants. In addition, to the extent that Fidelity's pleadings did not adequately plead the details of fraudulent concealment, the Court treats Fidelity's allegations of fraudulent concealment contained in their opposition briefs herein to be in the nature of a motion to amend the complaint. "An addition of new issues during the pendency of a summary judgment motion can be treated as a motion for leave to amend the complaint." Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994). Amendment of pleadings is governed by Fed. R. Civ. P. 15(a), which requires leave of court when amendment is sought after the filing of a responsive pleading. The decision whether to grant leave to amend "is entrusted to the sound discretion of the trial court." Jordan v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982), vacated on other wounds, 459 U.S. 810 (810). Four factors are relevant to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|----------|------------------------|------|----------------|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

the determination of a motion for leave to amend: "bad faith, undue delay, prejudice to the opposing party, and the futility of the amendment." Kaplan, 49 F.3d at 1370.  In this case, the Court does not find that these factors weigh against amendment   In particular, there is no evidence of bad faith on the part of Fidelity, and the delay is not unduly prejudicial, as ITSA has had notice of the claims against it since it was served with the SAC and, as stated above, the SAC does to some degree already allege fraudulent concealment.

In addition, and in the alternative, Fidelity further argues that, in fact, none of its claims of fraudulent transfer – even those that occurred prior to July 1999 – are time-barred, because the statute of limitations did not begin to run until the day that the underlying judgment in favor of Fidelity against the judgment debtors became final in May 2003.  Fidelity cites Cortez v. Vogt, 52 Cal. App. 4th 917, 920 (1997), in which the court held that:

> the context of the scheme of law of which section 3934.09 is a part, where an alleged fraudulent transfer occurs while an action seeking to establish the underlying liability is pending, and where a judgment establishing the liability later becomes final, we construe the four-year limitation period, i.e., the language, 'four years after the transfer was made or the obligation was incurred,' to accommodate a tolling until the underlying liability becomes fixed by a final judgment.

The Cortez court came to this conclusion on the basis that "legislative material published in connection with the adoption of the UFTA requires a conclusion a creditor has an option to establish creditor status by judgment and thus cause the limitations period to run from the time the underlying judgment becomes final." Id. at 929.

However, the Cortez court did not explicitly reach the question as to whether its reasoning applied to § 3439.09(c), which states that "[n]otwithstanding any other provision of law," claims are barred "if no action is brought or levy made within seven years after the transfer was made . . ."  In other words, the question remains whether the seven year maximum bar begins to run after the date of entry of the judgment, or whether § 3439.09(c) serves as an absolute bar to any claim, regardless of when judgment was entered, that is brought more than seven years after the alleged transfer occurred.  Fidelity argues that

if the time limitations for a judgment creditor's subsequent fraudulent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

$\bigcirc$

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

> transfer action established by subsections (a) and (b) of Section 3439.09
> are to be measured from the time of the underlying judgment, so must
> the period established by subsection (c). . .  Nothing in the Cortez
> court's analysis of Section 3439.09, or its determination that the
> limitations period runs not from the time of transfer but from the time
> of judgment, can legitimately be considered to apply to the 'transfer
> was made or obligation was incurred' language of subsections (a) and
> (b) but not to the identical language in subsection (c).  If the time within
> which suit must be brought does not begin to run until an underlying
> judgment becomes final, then the outer limit of that time must also be
> measured from the time of the underlying judgment.

Sup. Br. at 3.  Therefore, Fidelity argues, because the seven-year statute of limitations
began to run from the date of entry of judgment, none of Fidelity's fraudulent transfer
claims against ITSA are barred, even those that occurred prior to July, 1999.

ITSA, however, counters first that Cortez v. Vogt was wrongly decided.  Sup.
Opp'n at 2.  ITSA notes that "[w]hen Cortez was decided in 1997, there was little other
case law on the issue.  In the years since, however, all eight state appellate court[s] to
consider the question of whether a cause of action arises at the time of the transfer or when
judgment is entered [have] rejected the interpretation embraced in Cortez."  Sup. Opp'n at
2, citing K-B Bldg. Co v. Sheesley Constr., Inc., 833 A.2d 1132, 1136 (PA Super. 2003)
("Cortez has been roundly criticized and is against the weight of authority in this area . . .
Hence, we decline to follow Cortez and its holding that the statute of limitations embodied
in section 5109 of the UFTA is not triggered until entry of an underlying judgment in
favor of the creditor."); Sasco 1997 IN, LLC v. Zudkevich, 767 A.2d 469, 473 (N.J. 2001)
("both the explicit language of and the intent underlying the UFTA demonstrate that the
statute operates without regard to when the creditor obtains a judgment"); Gulf Ins. Co. v.
Clark, 20 P.3d 780, 787-88 (Mont. 2001) ("we join other jurisdictions which have
criticized the ultimate determination of the California court in Cortez."); Levy v. Markal
Sales Corp., 724 N.E.2d 1008, 1012 (Ill. App. 2000) ([w]e do not agree with the reading
given the committee comments by the Cortez court and do not believe these comments
support the court's ruling").  ITSA argues that the Court should, based on the subsequent
decisions of other state courts, reject Cortez's reasoning and hold that the statute of
limitations begins to run at the time of the transfers, not at the time of the entry of the
judgment.  See Abramson v. Brownstein, 897 F.2d 389, n.2 (9th Cir. 1990) ("We will

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

## CIVIL MINUTES - GENERAL

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

follow the decision of the state court of appeal unless there is convincing evidence that the state supreme court would decide the issue differently").

ITSA further notes in particular that Arizona courts have rejected the reasoning of Cortez. Sup. Opp'n at 3, citing Moore v. Browning, 50 P.3d 852, 860 (AZ App. 2002) ("Other jurisdictions agree with our conclusion that the California Court of Appeal erred in ruling that the statute of repose period in UFTA is tolled until the creditor obtains a judgment"). ITSA argues that Arizona law rightfully applies to this case, because the alleged ITSA transfers involve Arizona residents and property. Sup. Opp'n at 3, citing SAC ¶ 107 ("Under § 3439.04(a) of the California Civil Code and parallel provisions of Arizona's Fraudulent Transfer Statute, the Asset Protection Scheme was carried out through transfers and obligation 'made with actual intent to hinder, delay, or defraud' creditors"). Therefore, ITSA argues, the reasoning of Cortez should not be extended to the transfers involving ITSA.

ITSA next argues that, even if the Court were to accept Cortez's reading with regard to the four-year statute of limitations, the Court should not expand Cortez to find that the seven-year absolute bar does not begin to run until entry of a judgment. Sup. Opp'n at 4, citing Macedo v. Bosio, 86 Cal. App. 4th 1044, 1051 n.4 (2001) (holding that the language of "§ 3439.09(c) clearly meant to provide an overarching, all-embracing maximum time period to attack a fraudulent transfer, no matter whether brought under the UFTA or otherwise").

The Court concludes that, despite conflicting decisions in other states, the holding in Cortez applies to Fidelity's claims under the CUFTA. Furthermore, the Court sees no basis for interpreting Cortez as allowing the four-year statutory period to run from the date of entry of judgment, but not the seven-year statutory period. As Fidelity argues, if the time limitations for a judgment creditor's subsequent fraudulent transfer action established by subsections (a) and (b) of Section 3439.09 are to be measured from the time of the underlying judgment, there is no reason why the identical language in subsection (c) would be read in a different manner. Therefore, because the seven-year time bar began to run at the time of entry of judgment, rather than at the time of the transaction, Fidelity's claims are not time barred.

### d.    Conclusion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

Based on the foregoing, the Court DENIES ITSA's motion for summary judgment as to the fraudulent transfer claim.

### 2.    Fidelity's Claims for Violations of RICO

Fidelity's RICO claims are based on 18 U.S.C. § 1962(a), (c) and (d).  Section 1962(a) prohibits a person from using income derived from a "pattern of racketeering activity" to acquire an interest in or establish an enterprise engaged in or affecting interstate commerce.  18 U.S.C. § 1962(a).  Section 1962(c) makes it unlawful for "any person employed or associated with any enterprise engaged in" interstate or foreign commerce to conduct or participate "in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).  Under Section 1962(d), it is unlawful for any person to conspire to violate subsections (a) through (c).  18 U.S.C. § 1962(d).   In order to state a claim for relief for violation of these subsections, plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to the plaintiff's business or property.  Sedima v. Imrex Co., 473 U.S. 479, 496 (1985).

### a.    Evidence of Racketeering Activity

"Racketeering" refers to one of the many predicate acts referred to in Section 1961(1).  Pursuant to 18 U.S.C. § 1961(5), a "'pattern of racketeering activity' requires at least two acts of racketeering activity within a ten-year period."  The "pattern" requirement is met if plaintiffs show relatedness between two or more predicate acts, and that these "predicates themselves amount to, or that they otherwise constitute a threat of continuing racketeering activity."   H.J., Inc. v. Northwest Bell Telephone Co., 492 U.S. 229, 239 (1989).  "Continuity" is shown through allegations of either closed-or open-ended conduct, i.e. "a closed period of repeated conduct" or "past conduct that by its nature projects into the future with a threat of repetition."  Id. at 241-42 (citing Barticheck v. Fidelity Union Bank/ First National State, 832 F. 2d 36, 39 (3d Cir. 1987)).  "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time.  Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long term criminal conduct."  Id.  Fidelity relies on acts indictable under 18 U.S.C. §§ 1341, 1343, the federal mail and wire fraud statutes, and 18 U.S.C. § 1965, relating to the laundering of monetary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

instruments.  18 U.S.C. § 1961(1).

ITSA argues that Fidelity has no evidence that ITSA engaged in any of the predicate acts (mail fraud, wire fraud, and money laundering) alleged in Fidelity's SAC. Mot. at 12; See SAC ¶ 96.  For the reasons stated herein, ITSA argues that payment of interest and repayment of principal on legitimate loans cannot satisfy the requirement of a specific intent to defraud under the mail and wire fraud statute, and that such acts cannot quality as a "pattern" of racketeering activity.  Mot. at 12.  Furthermore, ITSA argued that giving money to the judgment debtors pursuant to the terms of the Zodiac Trusts and Noach Kramer's will does not qualify as money laundering.  Mot. at 13.

Furthermore, ITSA argues that Fidelity has no evidence that ITSA's actions caused "injury to the plaintiff's business or property" See Sedima v. Imrex Co., 473 U.S. 479, 496 (1985).  Specifically, Fidelity argues that its actions did not hinder Fidelity in collecting money that it would normally have been able to collect, because the Zodiac Trust did not contain the judgment debtors' assets.[9]  Reply at 11.

Fidelity, however, argues that it has "identified several transactions whereby Zodiac received funds from or disbursed funds to the judgment debtors or entered into transactions encumbering the judgment debtors' assets."  Opp'n at 17.

---

[9] ITSA also argues that summary judgment is appropriate because Fidelity has no evidence that ITSA is conducting "ongoing" criminal conduct, arguing that (a) to the extent Fidelity relies on transfers to the Meshkatais from the Zodiac Trust, "the last transfer occurred more than six and a half years ago" and (b) that Zodiac has no assets and is in the process of closing.  Mot. at 12; Reply at 11; Lofts Decl. ¶¶ 21-23.  Reply at 11, citing Turner v. Cook, 362 F.3d 1219, 1229 (9th Cir.  2004) ("in order to allege open-ended continuity, a RICO plaintiff must charge a form of predicate misconduct that 'by its nature projects into the future with a threat of repetition").  However, ITSA fails to acknowledge that Fidelity may also satisfy the requirements of RICO by showing closed-ended continuity, that is, by demonstrating a "series of related predicates extending over a substantial period of time."  Turner, 362 F.3d at 1231.  Therefore, the argument that the last transfer occurred years ago and that Zodiac is in the process of closing does not, in itself, preclude Fidelity's RICO claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

### b.    Enterprise Requirement Under RICO

The definition of "enterprise" under RICO includes "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).   In United States v. Turkette, the Supreme Court explained that an "enterprise" must be distinct from the "pattern of racketeering activity."  United States v. Turkette, 452 U.S. 576, 582 (9th Cir. 1996).  The Court stated that "[t]he enterprise is an entity, . . . a group of persons associated together for a common purpose of engaging in a course of conduct" which is distinct from "racketeering activity, . . .a series of criminal acts as defined by the statute." Id.  An enterprise is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."  Id.  In contrast, a "pattern of racketeering activity" is "proved by the evidence of the requisite number of acts of racketeering committed by the participants in the enterprise.  While the proof used to establish these separate elements may in particular cases, coalesce, proof of one does not necessarily establish the other."  Id.

In Odom v. Microsoft, the Ninth Circuit observed that since Turkette, there has been confusion as to what is required to establish an "associated-in-fact" enterprise. Odom v. Microsoft, 486 F.3d 541 (9th Cir. 2007).  Whereas four circuits have interpreted Turkette to require an association-in-fact to have "some kind of ascertainable separate structure, see e.g., Asa-Brandt, Inc. v. ADM Investor Servs. Inc., 344 F.3d 738, 752 (8th Cir. 2003); United States v. Sanders, 928 F.2d 940, 944, (10th Cir. 1991); United States v. Tillet, 763 F.2d 628, 632 (4th Cir. 1985); United States v. Roccobene, 709 F.2d 214, 223-24 (3d Cir. 1983); and United States v. Bledsoe, 674 F.2d 647, 665 (8th Cir. 1982), the Ninth Circuit joined other circuits in holding "that an associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise." Id. (citing with approval United States v. Patrick, 248 F.3d 11, 19 (1st Cir. 2000); United States v. Perholtz, 842 F.2d 343, 354 (D.C. Cir. 1988); United States v. Cagnina, 697 F.2d 915, 921 (11th Cir. 1983); and United States v. Bagaric, 706 F.2d 42, 56 (2d Cir. 1983)).

ITSA argues that Fidelity's RICO claims must fail, because there is no evidence that ITSA was part of a criminal enterprise.   ITSA argues that its only purpose was to carry out the terms of the Zodiac Trust, and that there is no evidence that it acted with any common purpose to help the judgment debtors avoid paying Fidelity's judgment.  Mot. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

11.  However, Fidelity counters that "Fidelity has offered evidence of transactions between Zodiac and the judgment debtors which strongly suggests that the judgment debtors exerted control over Zodiac and that Zodiac engaged in sham 'loans' and directed the filing of liens intended to hinder Fidelity's collection efforts."  Opp'n at 16.

### c.  Conclusion

The Court finds that Fidelity has raised a genuine issue of material fact as to whether ITSA engaged in a pattern of racketeering activity.  As detailed above, Fidelity has raised questions of fact as to whether transfers conducted by ITSA were fraudulent.  Because these transactions were conducted via wire, they potentially qualify as "predicate acts" under RICO.  See, e.g., Gutierrez v. Givens, 1 F. Supp. 2d 1077, 1085-86 (S.D. Cal. 1998) (finding that plaintiff had adequately stated a RICO claim based on allegations of fraudulent transfers to avoid creditors).  Furthermore, Fidelity has raised a genuine issue of material fact as to whether ITSA is involved in an "enterprise association-in-fact."  ITSA has offered evidence raising a question of fact as to whether that judgment debtors exerted control over Zodiac Trust, for example by directing Zodiac to engage in "sham" loans and other transactions to hinder Fidelity's collection efforts.  Therefore, the Court DENIES ITSA's motion for summary judgment as to Fidelity's RICO claim.

### 3.  Plaintiff's Claim for Civil Conspiracy

Fidelity's claim for conspiracy essentially alleges that ITSA conspired to engage in a fraudulent transfers under CUFTA.  Absent underlying proof of the underlying tort, there is no separate tort of civil conspiracy.  See Richard B. Levine, Inc. v. Higashi, 131 Cal. App. 4th 566, 574 (Cal. Ct. App. 2005).  "Conspiracy is 'a legal doctrine that imposes liability on person who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.'"  5 Witkin Summary of California Law Torts § 47 at 115 (10th ed. 2005) (quoting Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510 (Cal. 1994)).  Therefore, "there must be a showing of knowledge of the planned tort and intent to aid in its commission."  Id. (citing Wyatt v. Union Mortgage Co., 24 Cal. 3d 773, 784-85 (Cal. 1979)).

As discussed herein, ITSA argues that Fidelity has presented no evidence that it engaged in fraudulent transfers, and therefore argues that it cannot be held liable for civil

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

conspiracy to commit such transfers.  Mot. at 15-16.  However, as set forth in detail above, the Court finds that Fidelity has raised genuine issues of material fact as to whether ITSA violated the CUFTA.  Furthermore, the circumstances of the transfers at issue raise questions as to whether ITSA conspired with the judgment debtors to fraudulently transfer assets so as to avoid paying Fidelity's judgment.  Therefore, the Court DENIES ITSA's motion for summary judgment as to Fidelity's civil conspiracy claim.

### 4. Plaintiff's Claim to Set Aside the Spendthrift Provisions of the Zodiac Trust

ITSA argues that Fidelity cannot set aside the spendthrift provisions of the Zodiac Trust, because (a) the Zodiac Trust was not created by the Friedmans or the Meshkatais and (b) there is no evidence to support Fidelity's allegations that the beneficiaries exercise excessive control over the Zodiac Trust.  Mot. at 17.

ITSA also argues that, because the judgment debtors are not the only beneficiaries of the Zodiac Trust, setting aside the spendthrift provisions would lead to inequity and the transfer of funds to Fidelity which belong to other beneficiaries.  Mot. at 17.  Furthermore, ITSA argues that because Zodiac has no assets, setting aside the spendthrift provisions would be "effectively meaningless."  Mot. at 17-18.

Despite ITSA's arguments, the Court declines to grant summary judgment in favor of ITSA.  The fact that the judgment debtors did not create the Zodiac Trust is not dispositive, given that Fidelity has raised genuine issues of material fact as to whether judgment debtors exercised excessive control over the Zodiac Trust.

## V. CONCLUSION

For the foregoing reasons, the Court DENIES ITSA's motion to dismiss for failure to prosecute.  The Court DENIES ITSA's motion for summary judgment.

IT IS SO ORDERED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | April 27, 2009 |
|---|---|---|---|
| Title | Fidelity National Financial, Inc., et al. v. Colin H. Friedman, et al. | | |

00      :      00

Initials of Preparer          CMJ