UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | October 8, 2010 |
|---|---|---|---|
| Title | FIDELITY NATIONAL FINANCIAL, INC., and FIDELITY EXPRESS NETWORK, INC. v. COLIN FRIEDMAN, individually and as trustee of the Friedman Family Trust UDT, et al. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(In Chambers:) DEFENDANTS' MOTION FOR EXECUTION OF PRELIMINARY INJUNCTION BOND**

## I. INTRODUCTION AND BACKGROUND

On July 6, 2006, plaintiffs Fidelity National Financial, Inc. and Fidelity Express Network, Inc. filed the complaint in the present action alleging violations of 18 U.S.C. § 1962 (a), (c) and (d) of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), fraudulent conveyance in violation of California Civil Code § 3439.04 (the California Fraudulent Transfer Act), and conspiracy to defraud creditors against seven judgment debtor defendants and fifteen other persons and entities.[1] Comp. at 27-32.

On January 11, 2007, after thorough consideration of the parties' written and oral

[1] The following are named defendants in plaintiffs' complaint: Colin H. Friedman, individually and as trustee of the Friedman Family Trust UDT; Hedy Kramer Friedman, individually and as trustee of the Friedman Family Trust UDT; Farid Meshkatai; Anita Kramer Meshkatai, individually and as trustee of the Anita Kramer Living Trust; Steven Spector, as trustee of the Kramer Family Trust, the Friedman Insurance Trust, the Negev Trust, the Brendon Friedman Trust, the Jason Friedman Trust, and the Elan Yosef Meshkatai and Arianna Meshkatai Irrevocable Trust; Lorraine Ross, as trustee of the Friedman Insurance Trust; Space Planners LLC, d/b/a Closets by Design; Azura International LLC; Worldwide Network, Inc.; Executive-Worldwide Inc.; Executive Legal Network, Inc.; KZE Attorney Service, Inc.; Worldwide Reprographics, Inc. d/b/a Simplex Reprographics; and Medhi Ektefaie.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA O

CIVIL MINUTES - GENERAL

| Case No. | CV 06-4271 CAS (JWJx) | Date | October 8, 2010 |
|---|---|---|---|
| Title | FIDELITY NATIONAL FINANCIAL, INC., and FIDELITY EXPRESS NETWORK, INC. v. COLIN FRIEDMAN, individually and as trustee of the Friedman Family Trust UDT, et al. | | |

arguments, the Court granted plaintiffs' motion for a preliminary injunction, restraining defendants from transferring assets except in limited specified circumstances, and requiring defendants to maintain accurate accounting records to be submitted monthly to the Court. Upon defendants' motion, the Court issued an order clarifying the scope of the preliminary injunction on February 12, 2007. In the order, the Court also granted defendants the Friedmans, the Meshkatais, Laraine Ross, Space Planners, LLC, and Executive Legal Network's (hereinafter the "Hyman defendants") request to set a hearing on the amount of security in the form of a bond that plaintiffs would be required to provide in conjunction with the granting of their motion for a preliminary injunction. On March 30, 2007, this Court issued an order granting defendants' motion for plaintiffs to post bond in the amount of $1.1 million. On January 15, 2010, the jury returned a verdict in this case in favor of each defendant on all claims that were presented to it. On June 15, 2010, the Court filed its Findings of Fact and Conclusions of Law in favor of all defendants on plaintiffs' fifth claim for relief to set aside and invalidate the spendthrift provisions of all trust defendants based on the judgment debtors' alleged excessive control over disbursement of the trusts' assets.

On August 16, 2010, defendants filed the instant Motion for Execution of Preliminary Injunction Bond. On August 23, 2010, plaintiffs opposed the motion. On August 30, 2010, defendants filed a reply in support of their motion. On August 31, 2010, plaintiffs filed objections to defendants' evidence and a request to strike defendants' reply brief. After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65(c) provides that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." "A party has been wrongfully enjoined within the meaning of Rule 65(c) when it turns out the party enjoined had the right all along to do what it was enjoined from doing." Nintendo of Am. v. Lewis Galoob Toys, 16 F. 3d 1032, 1036 (9th Cir. 1994) 1036. "There is a rebuttable presumption that a wrongfully enjoined party is

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 2 of 8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
O

CIVIL MINUTES - GENERAL

| Case No. | CV 06-4271 CAS (JWJx) | Date | October 8, 2010 |
|---|---|---|---|
| Title | FIDELITY NATIONAL FINANCIAL, INC., and FIDELITY EXPRESS NETWORK, INC. v. COLIN FRIEDMAN, individually and as trustee of the Friedman Family Trust UDT, et al. | | |

entitled to have the bond executed and recover provable damages up to the amount of the bond." Id. at 1036-7. "By adhering to this standard, the party enjoined will usually recover damages, thus discouraging parties from requesting injunctions based on tenuous legal grounds. . . . Furthermore, a presumption that damages will be awarded from the bond assures district court judges that defendants will receive compensation for their damages in cases where it is later determined a party was wrongfully enjoined. Moreover, demands on judicial resources may be relieved to some extent, because a defendant who can recover damages against a preliminary injunction bond will be less likely to file a separate malicious prosecution action. Finally, this standard provides an equitable means by which courts can decline to impose damages on the rare party who has lost a case on the merits but nevertheless should not suffer the execution of the preliminary injunction bond." Id. at 1037 (citations omitted).

"An improperly enjoined party may not demand damages on the bond simply because the injunction was improperly granted. He must demonstrate injury as a consequence of the injunction." Matek v. Murat, 862 F. 2d 720, 733 (9th Cir. 1988). "Damages on an injunction bond are limited to those actually and proximately resulting from the effect of the injunction itself, as opposed to litigation expenses independent of the injunction." Sionix Corp. v. Moorehead, 299 F. Supp. 2d 1082, 1086 (S.D. Cal. 2003)

## III. DISCUSSION

Defendants argue that their success on plaintiff's fraudulent transfer claims proves that they were wrongfully enjoined, because the preliminary injunction at issue here was "issued based on Plaintiffs' fraudulent transfer claims." Mot. At 6-7. Plaintiffs do not argue to the contrary. The disagreement between the parties goes to whether defendants have shown that they were damaged by the issuance of the injunction. Opp. at 1.

The amount of the bond required in this case was originally based on this Court's analysis that the injunction "could potentially jeopardize the trusts' $1.1 million loan to Bellazura," despite a finding that additional amounts would not be required to secure possible loss of profits, because such potential profits of the business in question were too speculative. March 30 Order Granting Defendants' Motion For Plaintiffs To Post Bond,

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 3 of 8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | October 8, 2010 |
|---|---|---|---|
| Title | FIDELITY NATIONAL FINANCIAL, INC., and FIDELITY EXPRESS NETWORK, INC. v. COLIN FRIEDMAN, individually and as trustee of the Friedman Family Trust UDT, et al. | | |

Exhibit D to Defendants' Request for Judicial Notice, at 7. Defendants now assert that in fact the injunction did cause the trusts to lose their investment in Azura. Mot. at 8. Specifically, defendants assert that Azura was forced to close its operations without repaying the loan "because the Trust Defendants were enjoined from maintaining the business of Azura through Azura's manufacturing affiliate GMA, of which Azura owns 65%." Id. Specifically, defendants assert that because they were not able to loan $150,000 to GMA, GMA was forced to close its Chinese factory based on its inability "to purchase raw materials or pay its employees," "which in turn, led to the closing of Azura" because GMA "was the exclusive manufacturer of Azura's products." Id. at 10.

As evidence, defendants offer testimony by their counsel, David M. Bass, and former trustee of the Kramer Family, Negeve, Anna and Noach Kramer, Brendom Friedman and Jason Friedman Trusts, Steven M. Spector, that the failure of Azura was due to the fact that the trusts were not able to provide needed capital to Azura because of the preliminary injunction. Mot. at 10. Defendants also offer Azura's income statements and bank statements, both showing "a steady decline in revenues [and deposits] between the time the Preliminary Injunction was entered and the time Azura ceased its operations. Mot. at 11. Defendants also offer evidence that the trust defendants invested $1.265 million in Azura. Mot. at 14-16. Defendants argue that in combination, this evidence demonstrates that they are entitled to the full amount of the injunction bond because it demonstrates that the trust defendants' investment in Azura was greater than the amount of the injunction bond and that this investment was lost as a result of the injunction bond. Moreover, defendants argue that there is no showing of a "good reason," such as failure to mitigate to deny execution of the bond, that defeats their motion. Finally, defendants argue that plaintiffs acted in bad faith in moving for a preliminary injunction, and that "bad faith supports the Trust Defendants' request for execution of the bond." Id. at 24. Specifically, defendants argue that the declaration of William Buckley, an accounting expert, in support of plaintiffs' motion for a preliminary injunction, suggested that he had decisively concluded that there were fraudulent transfers, while at trial and in his deposition he did not give similarly conclusive testimony on their alleged character. Id. at 21.

In opposition, plaintiffs argue that defendants are not entitled to execution of the injunction bond because they have not shown that "absent the preliminary injunction,

CV-90 (06/04) **CIVIL MINUTES - GENERAL** Page 4 of 8

| Case No. | CV 06-4271 CAS (JWJx) | Date | October 8, 2010 |
|---|---|---|---|
| Title | FIDELITY NATIONAL FINANCIAL, INC., and FIDELITY EXPRESS NETWORK, INC. v. COLIN FRIEDMAN, individually and as trustee of the Friedman Family Trust UDT, et al. | | |

Azura would have made sufficient net income to pay back the $1.25 million loan for which the bond was required, or indeed that Azura ever intended to repay the money." Opp. at 1. As to the issue of intent to repay, plaintiffs argue that "there was no evidence of a repayment schedule or interest rate, no demand for repayment, and no payments made." Id. at 9.

Even if there were an intent to repay, plaintiffs argue that this would never have been possible, even absent the preliminary injunction, because Azura showed no indication of becoming profitable, as it "maintained a pattern of consistent losses from its inception in 2004 until the Court issued the preliminary injunction in 2007." Id. at 1. Plaintiffs further argue that even if defendants can show that the businesses needed the "infusions of cash" that were prevented by the injunction, "the need for Trust infusions of cash to keep Azura from failing is not the same as showing that the same infusions of cash would have resulted in any profits." Id. Furthermore, "any cash infusions by the trust would have been temporary," as "[m]onths before this case went to trial the Trusts ran out of liquid assets and therefore would not have been able to fund even day-to-day operations of the business." Id. at 3. Moreover, plaintiffs argue, the failure of the business was not due to the inability of the trusts to loan further capital, but rather due to "lack of control over [] Chinese partners, fraudulent bookkeeping, problems with personnel and unions, difficulties in working with the Chinese government, and the collapse of the housing market." Id. Additionally, plaintiffs point to the failures of previous businesses run by the Friedmans to suggest that there was a significant likelihood of Azura failing as well. Id. at 6. Additionally, plaintiffs argue, a showing that GMA might have become profitable is too speculative to serve as a basis for recovery. Id. at 7. "Even if GMA had attained profitability (and this is speculation), there is no evidence that Azura would have benefitted, or that any funds would have made their way back to the Trusts." Id.

In sum, plaintiffs argue, because "Azura was doomed to failure at some future point regardless of the preliminary injunction," defendants cannot show that the preliminary injunction was the cause of their harm. Id. at 3. "In the other cases cited by defendants, the trial court properly found what defendants cannot show here: that the party enjoined sustained damages as a proximate consequence of the wrongfully obtained injunction, and there was admissible evidence from which to calculate the amount of such

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | October 8, 2010 |
|---|---|---|---|
| Title | FIDELITY NATIONAL FINANCIAL, INC., and FIDELITY EXPRESS NETWORK, INC. v. COLIN FRIEDMAN, individually and as trustee of the Friedman Family Trust UDT, et al. | | |

damages." Id. at 13.

Finally, plaintiffs respond to the allegations made regarding bad faith by maintaining that there was "no bad faith or inconsistency" among the opinions offered by Mr. Buckley. Id. at 10. Rather, plaintiffs argue, "there is nothing dishonest or inconsistent with Mr. Buckley's testimony. Throughout his analysis, Mr. Buckley personally believed that defendants' asset transfers were fraudulent. His personal opinion that defendants committed fraud strengthened as he reviewed more documents. He was simply not retained to offer this opinion at trial because Fidelity felt strategically it would be more powerful to let the facts speak for themselves and allow the jury to draw the conclusion of fraud." Id. "Mr. Buckley also made it clear that, while he honestly believed certain transactions were fraudulent based on the evidence, he did not, and could not, know with absolute certainty whether they were fraudulent, either because he did not have complete documentation, or the facts were open to interpretation." Id. at 12.

In reply, defendants argue that their evidence indicates that "the lack of funding of the operations of GMA by the Trust Defendants–a direct limitation imposed on Azura and the Trust Defendants under the Preliminary Injunction–caused Azura to fail because the lack of funding made it impossible for Azura to receive products," and that plaintiffs "fail to demonstrate or provide any evidence that the closure of Azura was caused by anything other than the Preliminary Injunction." Reply at 1,2. As to plaintiffs' argument that there was no intent to repay the loans, defendants offer Azura's balance sheets to demonstrate that the loans were recorded as a line item and treated as loans. Id. at 2-3. As to plaintiffs' argument that Azura failed for reasons other than the lack of capital caused by the preliminary injunction, defendants argue that the testimony offered by plaintiffs shows only that "certain difficulties existed," not that those difficulties were the primary, or "even a factor in GMA's closure." Id. at 6. Additionally, they argue that "[p]laintiffs have presented no evidence to support their claim that Azura would have required additional investments to fund the day to day operations of the business after making the additional investment in GMA," and "the fact that the Trust Defendants ran out of liquid assets does not take into consideration the fact that absent the Preliminary Injunction, the Trust Defendants could have liquidated assets to invest in Azura." Id. at 7. Furthermore, defendants argue that plaintiffs incorrectly assume that defendants would have to show profitability of the company to recover. "A showing of future profits

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | October 8, 2010 |
|---|---|---|---|
| Title | FIDELITY NATIONAL FINANCIAL, INC., and FIDELITY EXPRESS NETWORK, INC. v. COLIN FRIEDMAN, individually and as trustee of the Friedman Family Trust UDT, et al. | | |

is not required to demonstrate damages as a result of an injunction when money has already been invested and that investment is at risk." Id. at 10. "Plaintiffs confuse profitability with value. Azura would not have to attain profitability to repay the loans to the Trust Defendants because Azura would have value as a going concern," and may have been able to repay the loans following a sale of the company, even if it were not profitable. Id. at 3.

The Court finds that defendants have submitted sufficient evidence to prove their damages as a result of the preliminary injunction with reasonable certainty. Defendants have submitted evidence that demonstrates that the trust defendants invested more than $1.1 million in Azura, which was lost when GMA and Azura were shut down. Exhibit E to Bass Declaration; Spector Declaration at ¶¶ 11-15 and accompanying exhibits; see also Mot. at 15-16. Defendants have also submitted evidence that the failure of GMA and Azura was in some part caused by the inability of the trust defendants to invest necessary funds in the business as a result of the preliminary injunction. Friedman Declaration ¶ 38; Exhibit D to Friedman Declaration;[2] February 12, 2007 Order on Ex Parte Application to Modify the Preliminary Injunction, Exhibit F to defendants' Request for Judicial Notice; Friedman Supplemental Declaration ¶ 20; Exhibits H-L to Friedman Supplemental Declaration. Plaintiffs' arguments that defendants cannot sufficiently prove future profitability of the business are unavailing as the preliminary injunction bond explicitly addressed possible loss of investment funds rather than future profits, which this Court agreed were too speculative. Moreover, plaintiffs essentially argue that defendants are not entitled to the execution of the bond because the business was likely to fail for a number of reasons other than the fact that defendants were prevented from making investments in GMA. While it is true that the business may have failed for other reasons, it seems to the Court that in this case the direct cause of the failure of the business at the time that it failed was that the trust defendants were unable to inject necessary capital into GMA, thereby eliminating Azura's only supplier.

[2] The Court overrules plaintiffs' objections to this evidence. As to plaintiffs' objections to evidence not relied on by the Court in this opinion, the Court overrules those objections as moot. The Court also denies plaintiffs' request to strike defendants' reply brief and considers the arguments set forth in the reply brief along with the evidence presented therewith.

CV-90 (06/04) CIVIL MINUTES - GENERAL Page 7 of 8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | October 8, 2010 |
|---|---|---|---|
| Title | FIDELITY NATIONAL FINANCIAL, INC., and FIDELITY EXPRESS NETWORK, INC. v. COLIN FRIEDMAN, individually and as trustee of the Friedman Family Trust UDT, et al. | | |

## IV. CONCLUSION

In light of the foregoing, the Court GRANTS defendants' motion for execution of the preliminary injunction bond. The Court orders that the Preliminary Injunction Bond for $1.1 million posted by plaintiffs Fidelity National Financial, Inc. And Fidelity Express Network, Inc., entered by this Court on April 30, 2007 through Surety RLI Insurance Company shall be executed and paid to the Trust Defendants in care of their trustee, Joseph Etienne.

IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | CMJ | | |

cc: Fiscal