UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | August 10, 2012 |
|---|---|---|---|
| Title | FIDELITY NATIONAL FINANCIAL, INC., and FIDELITY EXPRESS NETWORK, INC. v. COLIN FRIEDMAN, individually and as trustee of the Friedman Family Trust UDT, et al. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| CATHERINE JEANG | Not Present | N/A | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |

Attorneys Present for Plaintiffs:              Attorneys Present for Defendants:

Not Present                                                  Not Present

**Proceedings:**  (In Chambers:) DEFENDANTS' MOTION FOR EXECUTION OF PRELIMINARY INJUNCTION BOND

## I.  INTRODUCTION AND BACKGROUND

On July 6, 2006, plaintiffs Fidelity National Financial, Inc. and Fidelity Express Network, Inc. filed the complaint in the present action alleging violations of 18 U.S.C. § 1962 (a), (c) and (d) of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), fraudulent conveyance in violation of California Civil Code § 3439.04 (the California Fraudulent Transfer Act), and conspiracy to defraud creditors against seven judgment debtor defendants and fifteen other persons and entities.[1]  Compl. at 27–32.

---

[1] The following are named defendants in plaintiffs' complaint: Colin H. Friedman, individually and as trustee of the Friedman Family Trust UDT; Hedy Kramer Friedman, individually and as trustee of the Friedman Family Trust UDT; Farid Meshkatai; Anita Kramer Meshkatai, individually and as trustee of the Anita Kramer Living Trust; Steven Spector, as trustee of the Kramer Family Trust, the Friedman Insurance Trust, the Negev Trust, the Brendon Friedman Trust, the Jason Friedman Trust, and the Elan Yosef Meshkatai and Arianna Meshkatai Irrevocable Trust; Lorraine Ross, as trustee of the Friedman Insurance Trust; Space Planners LLC, d/b/a Closets by Design; Azura International LLC; Worldwide Network, Inc.; Executive-Worldwide Inc.; Executive Legal Network, Inc.; KZE Attorney Service, Inc.; Worldwide Reprographics, Inc., d/b/a Simplex Reprographics; and Medhi Ektefaie.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

## CIVIL MINUTES - GENERAL

| Case No. | CV 06-4271 CAS (JWJx) | Date | August 10, 2012 |
|---|---|---|---|
| Title | FIDELITY NATIONAL FINANCIAL, INC., and FIDELITY EXPRESS NETWORK, INC. v. COLIN FRIEDMAN, individually and as trustee of the Friedman Family Trust UDT, et al. | | |

On January 11, 2007, the Court granted plaintiffs' motion for a preliminary injunction, restraining defendants from transferring assets except in limited specified circumstances.

Pursuant to that injunction, the Court denied defendants' request to loan more money to Azura, a company to which the trust defendants had loaned over $1 million before the Court issued the preliminary injunction.

On March 30, 2007, the Court required plaintiffs to post bond in the amount of $1.1 million to be available for execution in the event defendants prevailed and could prove damages caused by the injunction.

The case was tried to a jury from January 5, 2010, to January 15, 2010. The jury returned a verdict in favor of each defendant on all claims that were presented to it. On June 17, 2010, the Court issued its Findings of Fact and Conclusions of Law in favor of all defendants on plaintiffs' fifth claim for relief to set aside and invalidate the spendthrift provisions of all trust defendants based on the judgment debtors' alleged excessive control over disbursement of the trusts' assets.

On October 8, 2010, the Court granted defendants' motion for execution of the preliminary injunction bond in full (the "Bond Order"). The Court found that defendants submitted evidence that demonstrated with reasonable certainty that the trust defendants invested more than $1.1 million in Azura, which was lost when Azura was shut down as a result of the preliminary injunction. The Court also found that the trust defendants' inability to inject necessary capital into GMA, Azura's exclusive supplier, was the "direct cause" of Azura's failure. Dkt. No. 1451 at 7.

Plaintiffs appealed, and on April 16, 2012, the Ninth Circuit vacated the Bond Order and remanded, finding that this Court erred in concluding that defendants had "proven they suffered damages in the amount of $1.1 million." Ninth Cir. Mandate at 5.[2]

---

[2] The Ninth Circuit affirmed this Court's determinations: (1) that defendants were wrongfully enjoined; (2) that plaintiffs did not rebut the presumption that defendants were entitled to have the bond executed and recover provable damages; and (3) that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | August 10, 2012 |
|---|---|---|---|
| Title | FIDELITY NATIONAL FINANCIAL, INC., and FIDELITY EXPRESS NETWORK, INC. v. COLIN FRIEDMAN, individually and as trustee of the Friedman Family Trust UDT, et al. | | |

On May 7, 2012, the Court ordered briefing concerning defendants' provable damages. Defendants filed their opening brief on June 4, 2012. Plaintiffs submitted their opposition on June 18, 2012. Defendants replied on June 25, 2012. Plaintiffs filed their sur-reply on July 2, 2012. After considering the parties' arguments, the Court finds and concludes as follows.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65(c) provides that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." "A party has been wrongfully enjoined within the meaning of Rule 65(c) when it turns out the party enjoined had the right all along to do what it was enjoined from doing." Nintendo of Am. v. Lewis Galoob Toys, 16 F. 3d 1032, 1036 (9th Cir. 1994).

"There is a rebuttable presumption that a wrongfully enjoined party is entitled to have the bond executed and recover provable damages up to the amount of the bond." Id. at 1036–7. "By adhering to this standard, the party enjoined will usually recover damages, thus discouraging parties from requesting injunctions based on tenuous legal grounds. . . . Furthermore, a presumption that damages will be awarded from the bond assures district court judges that defendants will receive compensation for their damages in cases where it is later determined a party was wrongfully enjoined. Moreover, demands on judicial resources may be relieved to some extent, because a defendant who can recover damages against a preliminary injunction bond will be less likely to file a separate malicious prosecution action. Finally, this standard provides an equitable means by which courts can decline to impose damages on the rare party who has lost a case on the merits but nevertheless should not suffer the execution of the preliminary injunction bond." Id. at 1037 (citations omitted).

---

preliminary injunction was "the direct cause of the failure of [Azura] at the time that it failed." Id. at 4–5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | August 10, 2012 |
|---|---|---|---|
| Title | FIDELITY NATIONAL FINANCIAL, INC., and FIDELITY EXPRESS NETWORK, INC. v. COLIN FRIEDMAN, individually and as trustee of the Friedman Family Trust UDT, et al. | | |

However, "[a]n improperly enjoined party may not demand damages on the bond simply because the injunction was improperly granted. He must demonstrate injury as a consequence of the injunction." Matek v. Murat, 862 F. 2d 720, 733 (9th Cir. 1988). "Damages on an injunction bond are limited to those actually and proximately resulting from the effect of the injunction itself, as opposed to litigation expenses independent of the injunction." Sionix Corp. v. Moorehead, 299 F. Supp. 2d 1082, 1086 (S.D. Cal. 2003).

### III.  DISCUSSION

#### A.  The Ninth Circuit's Mandate

In vacating and remanding, the Ninth Circuit held that the record "does not support a conclusion that the [trust defendants'] loss, i.e., the value of the loans to Azura before the issuance of the injunction less the value of those loans after the injunction was lifted, amounted to $1.1 million." Id. (citations omitted). Instead, the court noted that "evidence in the record shows that the loans required no interest payments, had no repayment date, and carried a high risk of default, all of which may reduce the value of a loan." Id. at 6. Further, the Ninth Circuit found that "the record does not support the conclusion that the loans would almost certainly been repaid in full but for the injunction, given evidence that Azura lost money in each year of its operation and its prospects of future success were speculative." Id. Finally, the Ninth Circuit held that this Court should have considered evidence that Azura retained assets after it failed, "some of which may have been available to make repayments on the loans." Id.

The Ninth Circuit directed that on remand, this Court "may select any reasonable method of calculation to develop a reasonable estimate, based on the evidence in the record, of the provable damages suffered by [the trust defendants]." Id. at 6. The Ninth Circuit explained that this Court "may determine such damages by developing a reasonable estimate of the value of the loans before the injunction issued, and subtracting a reasonable estimate of the value of the loans after the injunction was lifted," and that the suffered loss need not be determined with "'mathematical certainty,' but 'sufficient facts must be introduced so that [the court] can arrive at an intelligent estimate without speculation or conjecture.'" Id. at 6–7 (citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | August 10, 2012 |
|---|---|---|---|
| Title | FIDELITY NATIONAL FINANCIAL, INC., and FIDELITY EXPRESS NETWORK, INC. v. COLIN FRIEDMAN, individually and as trustee of the Friedman Family Trust UDT, et al. | | |

### B. The Parties' Arguments

According to defendants, the value of the trust defendants' loans to Azura depends on the fair market value of Azura at the time the preliminary injunction was entered and the time it was lifted. This is so, defendants argue, because the fair market value of Azura could itself be used to satisfy the trust defendants' loans to Azura. Dkt. 1494 at 3. Based on the transfer of a 20 percent ownership stake in Azura for $200,000 and the company's increasing revenues and diminishing losses during the period preceding the issuance of the injunction, defendants assert that $1 million is a "conservative" estimate of Azura's value as a going concern at the time the preliminary injunction was entered. Defendants further assert that an examination of Azura's balance sheets demonstrates that at the time the preliminary injunction was lifted, Azura had a liquidation value of approximately $154,258. Subtracting the liquidation value of Azura at the time the preliminary injunction was lifted from its value as a going concern at the time the preliminary injunction was entered, defendants contend that the trust defendants' damages as a result of the preliminary injunction equal approximately $845,742.

Plaintiffs argue that defendants' measure of damages is improper because it ignores the mandate from the Ninth Circuit. According to plaintiffs, by expressly directing this Court to measure damages based on the value of the *loans*, the Ninth Circuit implicitly rejected the going concern value of Azura as a reasonable measure of damages. Dkt. No. 1495 at 3. Plaintiffs further argue that defendants fail to address any of the factors set forth in the mandate from the Ninth Circuit, including the absence of an interest rate, the lack of a maturity date, the high risk of default, and Azura's lack of a history of profits. Id. at 3–6. Even if it were permissible to measure damages based on the value of Azura, plaintiffs argue that defendants' attempt at valuation is fatally flawed. Id. at 7–9.

### C. Analysis

The Court agrees with plaintiffs that the value of the *loans* to Azura may not be based on the value of the company itself. While Azura's value may impact that of the loans, basing the loans' value exclusively on Azura's runs afoul of the mandate from the Ninth Circuit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-4271 CAS (JWJx) | Date | August 10, 2012 |
|---|---|---|---|
| Title | FIDELITY NATIONAL FINANCIAL, INC., and FIDELITY EXPRESS NETWORK, INC. v. COLIN FRIEDMAN, individually and as trustee of the Friedman Family Trust UDT, et al. | | |

This Court required plaintiffs to post a bond because the preliminary injunction could "potentially jeopardize the trusts' $1.1 million loan to Azura." Order Granting Defendants' Motion for Plaintiffs to Post a Bond at 7. In light of this order, the Ninth Circuit expressly held that damages should be calculated based on the reduction in value that the preliminary injunction caused to the *loans*. Ninth Cir. Mandate at 6 (emphasis added).

The Ninth Circuit emphasized the fact that the "loans required no interest payments, had no repayment date, and carried a high risk of default." Id. If it were permissible to measure the trust defendants' damages based on the value of Azura, the Ninth Circuit would have had no reason to specifically highlight these factors.

Further, any "reasonable" calculation and "intelligent" estimate of the trust defendants' damages must take into account the specific characteristics of the loans at issue. As the Ninth Circuit explained, that the loans "required no interest payments, had no repayment date, and carried a high risk of default," may reduce their value. Ninth Cir. Mandate at 6. Defendants have failed to offer any evidence concerning how these factors affected the value of the loans at the time the preliminary injunction issued.[3]

Finally, while defendants contend that the value of Azura could have been used to pay back the loans, this is highly speculative.[4] The trust defendants' loans to Azura were not securitized by Azura's going concern value, and there is no evidence that Azura's

---

[3] Nor do defendants offer evidence "that the loans would have almost certainly been repaid in full but for the injunction," despite that "Azura lost money every year of operation and its prospects of future success were speculative." See Ninth Cir. Mandate at 6.

[4] Indeed, the trust defendants' claimed damages are speculative under any analysis set forth by defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

## CIVIL MINUTES - GENERAL

| Case No. | CV 06-4271 CAS (JWJx) | Date | August 10, 2012 |
|---|---|---|---|
| Title | FIDELITY NATIONAL FINANCIAL, INC., and FIDELITY EXPRESS NETWORK, INC. v. COLIN FRIEDMAN, individually and as trustee of the Friedman Family Trust UDT, et al. | | |

going concern value would have been available to pay off the loans ahead of any other secured or unsecured creditors.[5]

### IV.   CONCLUSION

In accordance with the foregoing, the Court hereby DENIES defendant's motion for execution of the preliminary injunction bond.

IT IS SO ORDERED.

|  | 00 : 00 |
|---|---|
| Initials of Preparer | CMJ |

---

[5] Because the Court finds it improper to value the loans to Azura based exclusively on the value of the company itself, the Court declines to address plaintiffs' argument that defendants' valuation of Azura is fatally flawed.